IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Barbara Randell,      Case No. 21-25175-beh

        Debtor.      Chapter 13

In re:

    Alberta Sellers,      Case No. 21-25284-beh

        Debtor.      Chapter 13

**DECISION AND ORDER ON DEBTORS' MOTIONS FOR RECONSIDERATION**

      These cases concern the same legal question: Does the right to cure prepetition mortgage default "within a reasonable time" under 11 U.S.C. § 1322(b)(5) obviate 11 U.S.C. § 1325(a)(5)(B)(iii)(I)'s requirement that secured claims be satisfied in equal monthly payments? The Court initially sustained—without a hearing—the mortgage creditors' objections to the debtors' plans based on *In re Enders*, Case No. 15-21737-gmh, ECF No. 24 (Bankr. E.D. Wis. Sept. 30, 2015), because the debtors proposed to satisfy prepetition mortgage arrears via *pro rata* payments (and, relatedly, to pay attorney's fees before curing the mortgage defaults). On October 27, 2021, the debtors filed motions for reconsideration under Fed. R. Civ. P. 60(b)(6) (incorporated by Fed. R.

Bankr. P. 9024), arguing the requirements under § 1325(a)(5) are inapplicable because the debtors propose to treat the mortgage creditors' claims under § 1322(b)(5)—not § 1322(b)(2). According to the debtors: "Section 1328(a)(1) makes it clear that long-term claims treated under § 1322(b)(5) are different than those treated under § 1322(b)(2) by making them non-dischargeable." In other words, the debtors' position is that "cure-and-maintain" claims paid in accordance with section 1322(b)(5) are not "allowed secured claims provided for by the plan" within the scope of section 1325(a)(5).

The Court held a preliminary hearing on January 11, 2022, at which the affected mortgage creditors verbally objected to the motions to reconsider. Creditors' counsel cited cases where courts have held that debtors are required to make equal monthly payments on secured claims, including prepetition mortgage arrears, to nonconsenting creditors. *See In re Schultz*, 363 B.R. 902 (Bankr. E.D. Wis. 2007); *In re Romero,* 539 B.R. 557 (Bankr. E.D. Wis. 2015). The Court also directed the parties to another case, *In re Miceli,* 587 B.R 492 (Bankr. N.D. Ill. 2018), where the bankruptcy court similarly concluded that the equal-monthly-payment requirement of section 1325(a)(5) applied to prepetition mortgage arrears paid in accordance with section 1322(b)(5).

The debtors argued that *Romero* and *Enders* are inapplicable here because those cases concerned claims secured by vehicles instead of residential mortgages. The debtors maintain that requiring mortgage defaults to be satisfied "within a reasonable time" is sufficient to protect the mortgagees' rights, and that mortgagees actually benefit from the possibility of the debtors paying off prepetition arrearages earlier than if they were required to pay the debt in equal payments over the full course of a 60-month plan. The debtors further argue that § 1325(a)(5) is not triggered because their plans do not provide for a secured (mortgage) claim, but only for an *arrearage* on a secured claim.

# ANALYSIS

**A.      Reconsideration**

The debtors moved for reconsideration under Fed. R. Civ. P. 60(b)(6), which allows a court to relieve a party from a "final judgment [or] order" in certain circumstances. But an order denying confirmation of a plan is not a final, appealable order, *see Bullard v. Blue Hills Bank*, 575 U.S. 496, 502 (2015), so Rule 60(b) is not directly applicable here. Nor is Rule 59(e) (incorporated by Bankruptcy Rule 9023) directly applicable, even though litigants frequently invoke it as a basis for "reconsideration." Rule 59(e) likewise applies only to "[j]udgments"—*i.e.*, "appealable orders," *see* Bankruptcy Rule 9001(7).

Instead, whether to reconsider these nonfinal orders is a matter left to the Court's discretion. *See, e.g., In re Kinney*, No. BR 13-27912 EEB, 2019 WL 7938816, at *1 (Bankr. D. Colo. Nov. 22, 2019), *aff'd,* 5 F.4th 1136 (10th Cir. 2021) ("[T]he standards of review applicable to Rule 59 and Rule 60(b) motions do not apply [to reconsideration of nonfinal orders]. . . . A court 'can use whatever standard it wants to review a motion to reconsider an interlocutory order.'") (citing *Patterson v. Nine Energy Serv., LLC*, 355 F. Supp. 3d 1065, 1110 (D.N.M. 2018) (noting that the "law of the case" doctrine does not limit a court's review of its own prior non-final order)); *Orozco v. Butler*, No. 16-CV-01179-SPM, 2020 WL 6710299, at *1 (S.D. Ill. Nov. 16, 2020) ("The district court has the ability to reconsider nonfinal orders, both as an exercise of its own discretion and pursuant to Federal Rule of Civil Procedure 54(b).").

The debtors assert that there is a basis for reconsideration because this Court—consistent with the practice of the other judges in this district—sustained the secured creditors' objections to confirmation based on *In re Enders* and 11 U.S.C. § 1325(a)(5)(B)(iii)(I), without providing the debtors an opportunity to respond or holding hearings on the objections. (Both debtors acknowledge their plans must be amended to become feasible to cure the

prepetition defaults.) The creditors did not object to reconsideration itself, but they maintain their substantive objections to confirmation.

After considering the record and the arguments of counsel, the Court will exercise its discretion and entertain the debtors' requests for reconsideration, to allow the debtors to present their positions and the Court to decide the matter after a more thorough examination of the applicable legal authority.

**B.     The Applicability of § 1325(a)(5)(B)**

Section 1322 of the Bankruptcy Code identifies both mandatory and permissive contents of a Chapter 13 plan. Under § 1322(b)(2), a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." And section 1322(b)(5) allows a plan, "notwithstanding paragraph (2) of this subsection," to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5).

Section 1325 of the Bankruptcy Code, in turn, sets forth the requirements for confirmation of a Chapter 13 plan. Under § 1325(a)(5), which dictates the treatment of "each allowed secured claim provided for by the plan," one of three requirements must be satisfied before a plan may be confirmed: (1) the holder of the secured claim has accepted the plan, § 1325(a)(5)(A); (2) the debtor surrenders the property securing such claim to the secured creditor, § 1325(a)(5)(C); or (3) the plan meets the "cramdown" requirements of § 1325(a)(5)(B), which include that the holder of the secured claim retains the lien securing such claim until payment of the debt under nonbankruptcy law or discharge, § 1325(a)(5)(B)(i)(I), that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim," § 1325(a)(5)(B)(ii), and that, if "property to be distributed pursuant to this subsection is in the form of

periodic payments, such payments shall be in equal monthly amounts," § 1325(a)(5)(B)(iii)(I).

Here, the secured creditors have not accepted the plans, the debtors have not proposed to surrender the collateral, and the plans do not propose to pay the creditors' mortgage arrearages in "equal monthly amounts," so the plans do not meet the confirmation requirements of § 1325(a)(5).

No matter, says the debtors' counsel, because § 1325(a)(5) does not apply to mortgage arrearages cured through a plan under § 1322(b)(5). This same argument, however, was considered—and rejected—by the U.S. Supreme Court in *Rake v. Wade*, 508 U.S. 464 (1993), which held that mortgage arrearages paid through a Chapter 13 plan were "provided for" by the plan, and therefore oversecured mortgage creditors were entitled to interest under § 1325(a)(5)(B)(ii). In *Rake*, the debtors had argued—like the debtors do here—that § 1325(a)(5) does not apply when the debtor cures a default on a home mortgage under § 1322(b)(5), and that § 1325(a)(5)(B)(ii) "applies only to secured claims which have been modified in the Chapter 13 plan, and which, by reason of Section 1322(b)(2), may not include home mortgages." 508 U.S. at 472 (internal quotation marks omitted). The Supreme Court disagreed:

> [The debtors'] interpretation of §§ 1322(b) and 1325(a)(5) is refuted by the plain language of the Code. Section 1325(a)(5) applies by its terms to "each allowed secured claim provided for by the plan." The most natural reading of the phrase to "provid[e] for by the plan" is to "make a provision for" or "stipulate to" something in a plan. See, *e. g.,* American Heritage Dictionary 1053 (10th ed.1981) ("provide for" defined as "to make a stipulation or condition").
>
> [The debtors]' plans clearly "provided for" [the mortgage creditor]'s home mortgage claims by establishing repayment schedules for the satisfaction of the arrearages portion of those claims. As authorized by § 1322(b)(5), the plans essentially split each of [the mortgage creditor]'s secured claims into two separate claims—the underlying debt and the arrearages. While payments of principal and interest on the underlying debts were simply "maintained" according to the terms of the mortgage documents during the pendency of [the debtors]' cases, each plan treated the arrearages as a distinct claim to be paid off within the life of the plan

> pursuant to repayment schedules established by the plans. Thus, the arrearages, which are a part of [the mortgage creditor]'s home mortgage claims, were "provided for" by the plans and [the mortgage creditor] is entitled to interest on them under § 1325(a)(5)(B)(ii).

508 U.S. at 473. *See also id.* at 473 n.9 ("Petitioners' argument that 'modified' claims cannot include home mortgage claims that have been 'cured' does not withstand scrutiny. . . . Petitioners' construction of § 1322(b)(2) also leads to the incongruous result that only home mortgage claims would be denied the benefits of § 1325(a)(5). By prohibiting modifications of the rights of holders of home mortgage claims, Congress could not have intended, in our view, to afford the holders of these claims *less* protection than the holders of other secured claims.").

In response to *Rake*, Congress enacted, via the Bankruptcy Reform Act of 1994, 11 U.S.C. § 1322(e), which provides: "Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." One bankruptcy court has held that § 1322(e) served to overrule *Rake* in its entirety, meaning that § 1325(a)(5) does not apply when arrearages on long-term debts are cured under § 1322(b)(5). *In re Davis*, 343 B.R. 326, 328 (Bankr. M.D. Fla. 2006) ("Since the enactment of Section 1322(e) courts have consistently recognized that the *Rake* decision was technically overruled, as Section 1322(e) has the effect of overriding Section 1325(a)(5) when arrears on a long term debt are cured. . . . Based upon the historical analysis of the interplay between Section 1322(b)(5) and Section 1325(a)(5) (under which Section 1325(a)(5)(b)(iii) falls), the Court finds that equal monthly payments are not required as the claim at issue is one in which arrears on long term debt are being cured.").

The debtors here rely on *Davis* in arguing that their plans need not comply with section 1325(a)(5) vis-à-vis the mortgage arrearages. But *Davis* has been uniformly criticized by other courts. For example, in disagreeing with

*Davis*, the Bankruptcy Appellate Panel for the First Circuit "reject[ed] the idea that § 1322(e) entirely removed cure payments from coverage under § 1325(a)(5)," explaining:

> Indeed, the idea that § 1322(b)(2) or (b)(5) is at odds with § 1325(a)(5)(B)(iii)(I) is simply wrong. Sections 1322(b)(2) and (b)(5) address a debtor's right to cure arrears on a long term secured debt. They do not address the manner in which debtors are permitted, or required, to render payment on such debt. Section 1325(a)(5) governs the manner in which debtors must provide for payments on secured claims, absent the consent of the holder of such claim.

*In re Hamilton*, 401 B.R. 539, 545–46 (B.A.P. 1st Cir. 2009) (internal citations omitted). *See also In re McDonald*, 397 B.R. 175, 178 (Bankr. D. Me. 2007) ("Certainly, *Rake* has been checked with respect to interest on cure payments. . . . But § 1322(e) did nothing to upset *Rake's* determination that a cure proposal under § 1322(b)(5), with or without interest, is a proposal to modify a secured claim under a plan. As such, it must meet the requirements of § 1325(a)(5).").

Other bankruptcy courts within this district are in accord. *See e.g., In re Miceli*, 587 B.R. 492 (Bankr. N.D. Ill. 2018); *In re Schultz,* 363 B.R. 902 (Bankr. E.D. Wis. 2007). *In re Miceli* concerned a debtor facing significant prepetition mortgage default. He proposed to make smaller payments on this debt at first to allow for earlier payment of his attorney fees. 587 B.R. at 495. The mortgagee objected based on the plan's failure to cure the arrearage in equal monthly installments. *Id.* at 494. The court held that the plain reading of § 1325(a)(5) renders it applicable "to each allowed secured claim provided for by the plan." *Id.* at 499. The *Miceli* court ruled that if monies distributed under subsection (a)(5)(B)(iii)(I) are periodically paid, "such payments shall be in equal monthly payments." Although acknowledging the argument that making debtors' counsel wait for payment could chill the willingness of lawyers to represent debtors, the *Miceli* court found no basis in the Code to prioritize payment of an attorney over a secured creditor's right to equal monthly

payments under § 1325(a)(5)(B). *Id.* at 500 (*citing In re Williams,* 583 B.R. 453, 457 (Bankr. N.D. Ill. 2018)).

*Schultz* concerned a debtor who wished to pay off her entire mortgage, including prepetition arrears, by making regular monthly payments followed by a balloon payment at the end of the plan term. 363 B.R. at 903. The Chapter 13 trustee objected to plan confirmation based on failure to provide for equal monthly payments. The *Schultz* court explained why equal monthly payments are required for long-term debt: "This court is not persuaded that subsection 1325(a)(5)(B)(iii) does not apply when only a portion of the allowed secured claim, i.e., current payments and the arrearage, are being paid pursuant to the plan. . . . Section 1322(b)(5) just means that the entire secured claim need not be paid in full under certain circumstances allowing curing of default, but the claim is still an allowed secured claim." *Id.* at 906.[1] Other decisions in this district align with *Schultz* and *Miceli,* even though they concern secured claims of vehicle lenders. *See, e.g., In re Romero,* 539 B.R. 559 (Bankr. E.D. Wis. 2015); *In re Enders,* Case No. 15-21737-gmh, ECF No. 24 (Bankr. E.D. Wis. Sept. 30, 2015).

This Court agrees that nothing in § 1322(e) abrogated *Rake*'s holding that mortgage arrearages paid off under the terms of the plan are "an element of an 'allowed secured claim provided for by the plan'" and must meet the requirements of section 1325(a)(5). 508 U.S. at 475.

Setting aside that the text of section 1325(a)(5) is plain—it applies to all "allowed secured claim[s] provided for by the plan," without exception—other courts have observed that excluding mortgage arrearage claims from the equal-monthly-payment requirement of § 1325(a)(5)(B)(iii)(I), which was enacted as

---

[1] After finding that the Chapter 13 trustee had standing to raise the equal monthly payment objection, and deciding that question, the *Schultz* court nonetheless confirmed the debtor's plan because the creditor had not objected to it. Omission of equal monthly payments as required by § 1325(a)(5)(B) was not fatal to Schultz's plan because § 1325(a)(5)(A) was satisfied. *In re Schultz,* 363 B.R. 902, 907 (Bankr. E.D. Wis. 2007).

part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), is contrary to the legislative history of section 1325:

> Before [BAPCPA] was passed in 2005, § 1325 obligated a debtor to distribute property to a secured creditor in an amount not less than the amount of the secured creditor's allowed claim. But pre-BAPCPA, § 1325 did not require any distribution—in the event it was in the form of periodic payments—be made in equal monthly amounts. When Congress passed BAPCPA in 2005, it added the "equal monthly amounts" language to § 1325 to prevent debtors from making balloon payments.

*In re Spark,* 509 B.R. 728, 730 (Bankr. M.D. Fla. 2014). *See also In re Hamilton*, 401 B.R. at 546 ("Thus, § 1325(a)(5) serves to restrict, to a certain degree, a debtor's ability to cure arrears on a long term debt. However, such restriction is in no way inconsistent with the provisions of §§ 1322(b)(2) or (b)(5). Nothing in §§ 1322(b)(2) or (b)(5) suggests that a debtor's right to cure arrears on long term secured debt through their plan is unfettered by other obligations and requirements under the Bankruptcy Code. Section 1322(e) does not alter that analysis. Indeed, the fact that Congress amended § 1325(a)(5)(B) specifically to address secured creditors' concerns regarding back loaded payments confirms this interpretation.") (internal citations omitted).

    The debtors' other argument, that under section 1322(b)(5), prepetition mortgage default must be satisfied "within a reasonable time," and therefore the equal monthly payment requirement is negated, is incorrect. Both *Schultz* and *Miceli* courts contemplated an early payoff of prepetition mortgage default so long as equal monthly payments were made. *Schultz,* 363 B.R. at 904 (quoting 8 Collier on Bankruptcy ¶ 1325.06[3][b][ii][A] (15th ed. 2006))[2]; *Miceli,* 587 B.R. at 497 (". . . [W]e do not suggest that section 1325(a)(5)(B)(iii)(I) requires monthly payments to be made throughout the full term of the plan."). *See also Morton v. Mancari,* 417 U.S. 535, 551 (1974) (". . . [W]hen two statutes

---

[2] "There also does not seem to be any requirement that the equal monthly amounts extend throughout the plan. A debtor may, for example provide for equal monthly amounts to be distributed to a particular secured creditor for the first 24 months of a 36-month plan or, if the requirement of providing adequate protection is met, the last 24 months of a 36-month plan."

are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."). Nothing in the Code text suggests that "equal monthly payments" and "within a reasonable time" are mutually exclusive.

In sum, when a secured creditor objects to the plan based on its failure to pay mortgage arrears in equal monthly payments, § 1325(a)(5)(B) requires the debtor to amend his or her plan.

## CONCLUSION AND ORDER

For the reasons stated above, the Court GRANTS the debtors' motions for reconsideration, and on reconsideration AFFIRMS its prior orders sustaining the mortgagees' objections to plan confirmation based on the failure to provide equal monthly payments as required by 11 U.S.C. § 1325(a)(5)(B)(iii)(I).

Dated: January 19, 2022

By the Court:

Beth E. Hanan
United States Bankruptcy Judge